# ARMED SERVICES BOARD OF CONTRACT APPEALS

Appeal of -- )
)
Arab Shah Construction Company ) ASBCA No. 60813
)
Under Contract No. H92237-11-C-0639 )

APPEARANCE FOR THE APPELLANT: Mr. Mohammad Idrees
President

APPEARANCES FOR THE GOVERNMENT: Jeffrey P. Hildebrant, Esq.
Air Force Deputy Chief Trial Attorney
Heather M. Mandelkehr, Esq.
Capt Justin D. Haselden, USAF
Trial Attorneys

## OPINION BY ADMINISTRATIVE JUDGE CLARKE

This is an appeal[1] submitted on the record pursuant to Rule 11. The Air Force (AF) filed a brief. Appellant failed to submit any briefs. Therefore, the AF did not submit a reply brief. Appellant claims $19,000 to reimburse it for moving construction material for two metal "pole barns" from Mangwal to Gardez, Afghanistan. We have jurisdiction pursuant to the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109. We deny the appeal.

## FINDINGS OF FACT

1. On 30 March 2011, the Special Operations Joint Task Force – Afghanistan (SOJTF-A) awarded Contract No. H92237-11-C-0639 to Arab Shah Construction Company (Arab Shah) at the fixed price of $62,000.00 for the construction of two metal pole barns in Mangwal, Afghanistan (R4, tab 1 at 1-2).

2. The contract incorporated the Federal Acquisition Regulation (FAR) 52.243-4, CHANGES (JUN 2007) clause (R4, tab 1 at 15). FAR 52.243-4(f) states, "No proposal by the Contractor for an equitable adjustment shall be allowed if asserted after final payment under this contract."

---

[1] We dismissed without prejudice an earlier appeal brought by appellant on similar facts because appellant had submitted no claim to the contracting officer. *See Arab Shah Constr. Co.*, ASBCA No. 60553, 16-1 BCA ¶ 36,461. As will be seen, appellant remedied this deficiency and submitted the present appeal after its claim was denied.

3. By email dated 23 May 2011 to Arab Shah, contracting officer (CO) SSgt Aaron Waltersdorff stated:

> I spoke with my guy who controls the teams and the guys at mangwell [sic] did not want a pole barn anymore. What [I] would like to offer you though, is the chance to take that same pole barn to Gardez to a team that does need it. Gardez is located in Paktia Province (NOT Paktika). It is in the district of Gardez located beside FOB lightning. If you can keep the same price [I] will send you a modification to change the location and then you can keep this contract. Thank you for your cooperation.

(R4, tab 2 at 1) In his declaration submitted in the record for this appeal, CO Waltersdorff stated, "Asking if the contractor could do the work for the same price was my initial negotiating tactic to get the best price for CJSOTF-A. Contractors would typically say 'no,' and we would negotiate a reasonable price from there." (Supp. R4, tab 23 at 2)

4. By email the same day Arab Shah responded:

> Okay no problem [I] want to be fair with us we have delivered our team and matireals [sic] to Mangwell [sic] now we have return them to Gardez it cost us more money.
>
> [P]lease send me MOD [I] will sign [I] have provide you a price for once [sic] latrine in Sharana hope you us [sic] this contract too.

(R4, tab 2 at 1)

5. Also on 23 May 2011 the parties entered into bilateral Modification No. P00001 for the following:

> 1. Change the location in which work will be performed. The original place of performance was at [Mangwal]. Due to a change in mission requirements the supplies are needed at VSLPP Gardez. Rather than cancel the purchase and start a new package these supplies shall now be changed from [Mangwal] to VSLPP Gardez.

2

2. All other terms and conditions remain unchanged.

(R4, tab 3)

6. Arab Shah submitted an invoice dated 6 July 2011 for $62,000.00 with description "construct TWO- 32' X 54' Metal Pole Barn." The AF accepted the invoice on 18 July 2011. (R4 tab 4) This was the only invoice submitted by Arab Shah to SOJTF-A.[2]

7. On 20 August 2011 the AF formally accepted Arab Shah's work by signing a Material Inspection and Receiving Report (DD Form 250) (R4, tab 6). The AF paid Arab Shah the $62,000.00 plus $224.09 in Prompt Payment Act interest by Electronic Funds Transfer (EFT) on 22 September 2011 (R4, tab 7).

*2016*

8. Arab Shah submitted an undated appeal to the Armed Services Board of Contract Appeals (ASBCA), which the Board received on 22 April 2016 (R4, tab 8 at 3). The appeal read:

> With due respects, the subject contract is belong to our company, my company have never got the payment for the services yet, we did deliver the materials and all the equipments to the site, but due the US Government issue, they told me to wait for long time, still we don't know about our payment why they have not pay our company, please accept this letter as claim letter for the contract H92237-11-C-0639. And please give us case number to process this claim if you have questions or need documents please let me know, thank you very much.

(*Id.*) Attached to the appeal letter was a copy of the first page of Contract No. H92237-11-C-0639 showing the amount of $62,000.00 (*id.* at 5). The Board docketed the appeal as ASBCA No. 60553 on 25 April 2016 (*id.* at 1). Through later submission to the Board in response to a government motion to dismiss, Arab Shah

---

[2] This fact is deemed admitted as a result of appellant's failure to respond to requests for admission in the discovery stage of this appeal. On 28 March 2017, the Board issued an order ruling on the government's motion to compel, stating that pursuant to Rule 8(c)(2), as appellant failed to answer the government's requests for admissions, they are deemed admitted. (*See also* Bd. corr., gov't first requests for admission & interrogatories at 6)

made it clear that the claim was for $19,000 for the cost of moving the material from Mangwal to Gardez (R4, tab 14 at 3, ¶ 10). (*id.* at 1)

9. In its submission to the Board in ASBCA No. 60553, appellant provided a screenshot of an email from CO Waltersdorff agreeing to compensate appellant for its costs relating to the change in location. The screenshot read: "Sir, I will pay your transportation and Escort Cost Send me your bill." The email in the screenshot was dated 23 May 2011 at 4:13 a.m. (R4, tab 11) The email was sent from the "j4contracting@gmail.com" a Gmail email address that CO Waltersdorff had used in other correspondence (R4, tab 2 at 1). The email in this screenshot did not state an amount or what the transportation and escort costs were for.

10. For the present appeal, the AF introduced a declaration from CO Waltersdorff wherein he discusses the screenshot email:

> 11. I have reviewed a computer screenshot of what Arab Shah has purported to be an email from me, dated 23 May 2011 at 4:13 AM at Gov't R4, Tab 12. I do not believe I sent this email. I do not believe the writing style is mine; specifically, the non-standard capitalization of "Escort Cost" and the single run-on sentence with no punctuation between "Cost" and "Send." Further, I do not believe my signature block appeared in reply emails, which this would have needed to be for the message to have any context. Finally, I could not have sent this message at 4:13 AM on 23 May 2011, because I had not yet broached the issue of a change in location by the time I purportedly sent this email—I only informed Arab Shah of that change for the first time later that day at 3:35 pm on 23 May 2011. Additionally, I never worked as early as 4:13 AM either. I frequently worked late into the night but was never in the office before 6:00 AM.
>
> ....
>
> 13. If Arab Shah had believed that it would cost more than the firm fixed price contract amount, it should have brought [sic] to my attention prior to both parties signing and executing Modification P00001. Because it was not, I was not able to negotiate the price. Similarly, if Arab Shah had made a claim for additional costs within 30 days of Modification P00001 or prior to final payment, or even a reasonable time after final payment, my memory of these

4

events would have been considerably better and I would
have been in a far superior position to address Arab Shah's
claims.

(Supp. R4, tab 23 at 2-3) CO Waltersdorff also stated "At no point was I working on a modification to the Contract to increase the price by $19,000" (id. at 2, ¶ 8). The AF also introduced a declaration by Mr. Robinson, contract specialist SOJTF-A, who searched contract files[3] but was unable to find the email in the screenshot (supp. R4, tab 24).

11. In its first appeal, Arab Shah also submitted to the Board a "Sales Receipt" issued by American Alliance Logistic Services dated 26 May 2011. The document states that American Alliance Logistic Services "received advance payment for the transportation" of materials from "[Mangwal] to Gardez Paktia" from Arab Shah in the amount of $19,000. (R4, tab 10 at 1) Prior to the 22 April 2016 appeal, Arab Shah had not submitted this receipt to the government.[4]

12. As alluded to above, on 4 August 2016, the Board granted the AF's motion and dismissed Arab Shah's appeal, ASBCA No. 60553, without prejudice on the ground that no proper CDA claim had been filed with the contracting officer (R4, tab 14). See Arab Shah Contr. Co., 16-1 BCA ¶ 36,461.

13. On 5 August 2016 Arab Shah submitted a claim to the AF for $19,000. Specifically, appellant's claim stated: "we never paid for the transportation from one location to other location, we are seeking $19,000 as matter of right which we spend in this transportation." (R4, tab 15)

14. On 21 September 2016, Arab Shah's representative, Mr. Mohammad Idrees, wrote in response to inquiries from the government regarding its claim, that it informed CO Waltersdorff over the phone of the increased costs associated with the change in location, and that it was "waiting" on a modification to add $19,000 to the contract. Appellant also asserted that CO Waltersdorff said over the phone that he was working on such a modification. (R4, tab 21) However, CO Waltersdorff states in his declaration that he does not recall Arab Shah informing him of the cost of changing the location of contract performance, nor does he recall any conversation with Mr. Idrees regarding an increase in the contract's firm-fixed price (supp. R4, tab 23 at 2). He also states that at no point was he working on a modification to increase appellant's price by $19,000 (id.). He would not have informed appellant that he was doing so by phone, as

---

[3] He was not able to access the email account "j4contracting@gmail.com" because of the passage of time since the closed account was last used (R4, tab 24 at 1).

[4] See footnote 2.

such requests for increased costs could only be acted on when a contractor submitted them in writing (*id.*).

15. On 23 September 2016, CO Gregory Martin issued a CO's final decision relating to Arab Shah's 5 August 2016 claim. The claim was denied by the government for the following reasons: (1) appellant provided no documentation that it submitted a request for equitable adjustment in accordance with FAR 52.243(e) within 30 days of the receipt of Modification No. P00001; (2) equitable adjustments under the Changes clause are not permitted after final payment of the contract, which occurred on 22 September 2011; and (3) appellant provided no evidence to establish that the CO agreed to compensate appellant for the change in delivery location. (R4, tab 22)

16. Appellant filed the instant appeal, docketed as ASBCA No. 60813, on 23 September 2016.

## DECISION

Arab Shah has the burden to prove entitlement by a preponderance of the evidence. *Monica Walker*, ASBCA No. 60436, 16-1 BCA ¶ 36,452 at 177,656. Arab Shah chose not to file briefs so we are left with the AF's brief and the documents in the record upon which to base our decision.

First we deal with the screenshot and sales receipt. The screenshot of a 23 May 2011 CO's email read: "I will pay your transportation and Escort Cost Send me your bill (finding 9). It indicates it was sent at 4:13 a.m. which would have been before the CO emailed Arab Shah for the first time about the change in location (which occurred at 3:35 p.m. that day) (*id.*). CO Waltersdorff states in his declaration that he did not write this email (finding 10). CO Waltersdorff frequently worked late into the night but never worked as early as 4:13 a.m., which is when this email was purportedly sent (his earliest arrival at work was 6:00 a.m.). The CO stated that at no point was he working on a modification to increase appellant's price by $19,000 (*id.*). Based on these discrepancies we find that the screenshot is not credible and we give it no weight. The same is true of the "Sales Receipt" purportedly issued by American Alliance Logistic Services dated 26 May 2011. There is no other evidence corroborating the receipt. It was not submitted to the AF in 2011 but at the same time as the screenshot, therefore, we find that it is not credible and we give it no weight. (Finding 11) The fact that Arab Shah submitted these questionable documents to the AF and the Board also affects our view of its credibility.

*The 23 May 2011 Exchange of Emails*

CO Waltersdorff's 23 May 2011 email notifying Arab Shah that the pole barns were no longer needed at Mangwal (finding 3) would have been a constructive

6

termination for convenience, however, Arab Shah continued to perform at the new location. *United Technologies Corp., Pratt & Whitney Grp., Government Engines & Space Propulsion*, ASBCA Nos. 46880, 46881, 97-1 BCA ¶ 28,818 at 143,802 (government directive to end performance of the work will not be considered breach but rather a constructive termination convenience). On the same day as CO Waltersdorff's email, Arab Shah informed CO Waltersdorff that it "cost us more money" to move the material to Gardez (finding 4). Arab Shah's request for a modification was ambiguous because it was in the same sentence that referred to a contract for a "latrine in Sharana" (*id.*). In his declaration, CO Waltersdorff indicated he was typically willing to negotiate an increase in price under similar circumstances (findings 3, 10). However, the parties never reached a meeting of the minds on this matter so we must decide this case on what actually happened, not on what might have happened.

*Modification No. P00001*

CO Waltersdorff's 23 May 2011 email offered to send Arab Shah a modification changing the location of construction of the pole barns "If you can keep the same price" (finding 3). The parties signed Modification No. P00001 that did just that, changed the location from Mangwal to Gardez without changing the price (finding 5).

Modification No. P00001 is clear and unambiguous and therefore we will enforce it as is. *Teg-Paradigm Environmental, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006) ("When the contract's language is unambiguous it must be given its 'plain and ordinary' meaning and the court may not look to extrinsic evidence to interpret its provisions."). Arab Shah has not raised any defense that would cause us not to enforce Modification No. P00001. To be fair, however, it appears to us that Arab Shah made a mistake signing Modification No. P00001 without negotiating an increase in price to cover transporting the pole barn material to Gardez. CO Waltersdorff said in his declaration that asking a contractor to do the work at the same price was a "negotiating tactic" and he would typically have entertained negotiating such a price increase (findings 3, 10). Arab Shah's mistake, however, was a unilateral mistake. The mistake was not obvious and there is insufficient evidence to prove that the AF knew of this mistake when it signed Modification No. P00001. The binding effect of Modification No. P00001 cannot be avoided since it arises from a unilateral mistake where the AF neither knew of the mistake nor had reason to know it. *Canadian Commercial Corporation*, ASBCA No. 37528, 89-1 BCA ¶ 21,462 at 108,154; *E.W. Eldridge, Inc.*, ENG BCA No. 5801, 92-1 BCA ¶ 24,472 at 122,091.

*Final Payment*

Arab Shah constructed the pole barns at Gardez to the satisfaction of the AF and was paid the contract price of $62,000 plus interest on 22 September 2011 (findings 6, 7). Arab Shah's first claim was submitted on 22 April 2016 (finding 8). The changes clause

7

in this contract states that equitable adjustments will not be allowed after final payment (finding 2). This is true even if a release has not been signed. *Chronometrics, Inc.,* ASBCA No. 46581, 95-1 BCA ¶ 27,476 at 136,877.

## CONCLUSION

We deny Arab Shah's appeal because we enforce Modification No. P00001 and the claim was submitted after final payment.

Dated: 7 September 2017

CRAIG S. CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 60813, Appeal of Arab Shah Construction Company, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals